### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-1550

**ZAURI KHUBASHVILI,**

     **Plaintiff,**

**v.**

**FRANCIS DRILLING FLUIDS, LTD. and
JAMES CORRELL**

     **Defendants.**

---

### PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff Zauri Khubashvili ("Plaintiff") comes before this Court and files his Original Complaint against Francis Drilling Fluids Ltd. and James Correll (collectively referred to herein as "Defendants"), and for cause of action will show:

### I.     JURISDICTION AND VENUE

1.     Subject Matter Jurisdiction in this Court is proper on the basis of diversity of citizenship.

2.     Plaintiff is a resident of Colorado.

3.     Defendant Francis Drilling Fluids, Ltd. ("Defendant Francis") is a resident of Louisiana.

4.     Defendant James Correll ("Defendant Correll") is a resident of Oklahoma.

5.     The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332.

6.    Venue is proper in this Court because it is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. 1391(a).

## II.    PARTIES

7.    Plaintiff is a natural person residing in Larimer County, Colorado, at 2705 Dotsero Avenue, Loveland, Colorado 80538.

8.    At all times relevant herein, Defendant Francis was an incorporated entity registered with the Louisiana Secretary of State.  Defendant Francis was formed under the laws of the State of Louisiana, and its principal place of business is located at 240 Jasmine Road, Crowley, Louisiana 70526.  Defendant Francis's registered agent for service of process is H. Edward Barousse III, located at 200 West Congress Street, Suite 1000, Lafayette, Louisiana 70502.

9.    At all times relevant herein, Defendant Correll was a natural person residing in Washita County, Oklahoma, at 500 E. Whitmer Street, Sentinel, Oklahoma 73664. Defendant Correll may be served with process at his residence located at 500 E. Whitmer Street, Sentinel, Oklahoma 73664, or wherever he may be found.

10.    In the event any parties are misnamed or are not included herein, Plaintiff contends that such was a "misidentification," "misnomer," and/or such parties are/were "alter egos" of the parties named herein.

## III.    FACTS

11.    Plaintiff's claims for damages arise from an incident that occurred on December 23, 2018 in Larimer County, Colorado on Interstate 25.

12.    On December 23, 2018, Plaintiff was traveling southbound in a 2007 Infiniti G35X on Interstate 25 near mile marker 255 in Larimer County, Colorado.

13.   At the same time, Defendant Correll was traveling southbound in a 2011 Peterbilt 388 tractor-trailer on Interstate 25 near mile marker 255 in Larimer County, Colorado.

14.   Defendant Correll was in the course and scope of his employment with Defendant Francis while he was driving on December 23, 2018.

15.   On the date in question, Defendants did not properly inspect the subject tractor-trailer and permitted its operation on public roadways when it was in an unsafe condition.

16.   As Plaintiff was driving directly behind Defendant Correll, Defendant Correll's left rear dual trailer tires became detached from the trailer.

17.   Defendant Correll's detached trailer tires collided with the front of Plaintiff's vehicle.

18.   Defendants' acts and omissions were proximate causes of the collision.

19.   As a direct and proximate cause of the collision, Plaintiff suffered severe harms and losses.

20.   Plaintiff injured his head and neck in the collision.

21.   Plaintiff required medical treatment as a result of the injuries he sustained in the collision.

22.   At all times relevant herein, Plaintiff was acting with due and reasonable care, and in conformance with all applicable ordinances and statutes.

23.   As a direct and proximate result of Defendants' acts and omissions, Plaintiff suffered in the past, and will continue to suffer in the future, economic damages, including medical expenses, as well as damages for physical impairment, physical disfigurement, and other noneconomic damages, including, but not limited to, pain and suffering, mental and emotional stress and anguish, loss of enjoyment of life, inconvenience, and impairment of quality of life.

## IV.     CAUSES OF ACTION

### A.     NEGLIGENCE OF DEFENDANT CORRELL

24.     Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth at length herein.

25.     At all times relevant herein, Defendant Correll was operating a commercial motor vehicle transporting property in interstate commerce.

26.     In order to undertake such actions, Defendant Correll is required to have, at a minimum, the knowledge and skills necessary for the safe operation of the commercial motor vehicle.

27.     The safe operation of tractor-trailers requires specialized knowledge, skill, and additional training not necessary for the safe operation of passenger vehicles because:

a.     tractor-trailers are heavier than passenger vehicles and take longer to stop, as compared to a passenger car operating at the same pre-braking speed;

b.     tractor-trailers are heavier and longer than passenger vehicles and take longer to execute turning and lane change maneuvers, as compared to passenger vehicles operating at the same pre-turn or lane change speed;

c.     tractor-trailers require more periodic maintenance and inspection, including detailed pre-trip and post-trip inspections;

d.     tractor-trailers are heavier than passenger vehicles and cause more significant property damage and/or personal injury or death in collisions, as compared to passenger cars operating at the same pre-collision speed and trajectory; and

  e.  tractor-trailers pose more of a risk of causing personal injury, death, or property damage in a collision, as compared to a collision involving a passenger vehicle operating at the same-pre-collision speed and trajectory.

28. In order to undertake the safe operation of a tractor-trailers, drivers such as Defendant Correll must have knowledge and skills in many areas, including the following:

  a.  the procedures for safe vehicle operations; and

  b.  the proper procedures for inspecting and maintaining a tractor-trailer.

29. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand the importance of regularly inspecting their tractor-trailers.

30. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to regularly inspect and maintain their tractor-trailers.

31. In addition to the basic knowledge and skills referenced above, it is standard in the industry for commercial motor vehicle drivers to understand that it is reasonably foreseeable that refusing to regularly inspect and maintain their tractor-trailer tires could cause a collision and resulting harms and losses.

32. Defendant Correll's careless, negligent, and unlawful acts directly and proximately caused Plaintiff's harms and losses in one or more of the following particulars:

  a.  improperly maintaining the tires, wheel hub assemblies, and/or all component parts on the subject tractor-trailer;

  b.  refusing to inspect the tires, wheel hub assemblies, and/or all component parts of the subject tractor-trailer;

c.      driving the subject tractor-trailer in an unsafe condition;

d.      traveling at unreasonable speed given the circumstances;

e.      exhibiting inadequate driver attention; and

f.      refusing to follow the proper procedures for safe commercial vehicle operations.

33.    As a direct and proximate result of the foregoing acts and/or omissions, Plaintiff suffered harms and losses in an amount to be determined at trial.

## B.      NEGLIGENCE *PER SE* OF DEFENDANT CORRELL

34.    Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth at length herein.

35.    When Defendant Correll operated the subject tractor-trailer on December 23, 2018, he violated the following Colorado statute:

a.      C.R.S. § 42-4-202(1), which makes it unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe condition as to endanger any person.

36.    Plaintiff is a member of the class for whose protection the above-mentioned statute was enacted to protect.

37.    The injuries and damages Plaintiff sustained as a result of the collision are the kind of injuries and damages the above-referenced statute is intended to prevent.

38.    Defendant Correll's breach of the above-mentioned statute was a direct and proximate cause of the injuries and damages plaintiff sustained. As such, Defendant Correll was

negligent *per se*.

## C.  *RESPONDEAT SUPERIOR*

39.  Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth at length herein.

40.  Without waiving the foregoing, in conjunction with, additionally and/or alternatively. Plaintiff would further show this Court that Defendant Correll was in the course and scope of his employment with Defendant Francis at the times of the incident making the basis of this lawsuit. Under the doctrine of *Respondeat Superior*, Defendant Francis is responsible for Plaintiff's damages caused by Defendant Correll's negligence as alleged above.

## D.  NEGLIGENCE OF DEFENDANT FRANCIS

41.  Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth at length herein.

42.  At all times relevant herein, Defendant Francis operated as a commercial motor carrier.

43.  In return for the privilege to operate commercial motor vehicles on public roadways, prospective motor carriers must make certain safety related certifications and verifications.

44.  Motor carriers such as Defendant Francis are required to submit a Form MCS-150 to the Federal Motor Carrier Safety Administration ("FMCSA") and obtain a United States Department of Transportation ("USDOT") number.

45.  Each Form MCS-150 Defendant Francis submitted or will submit contains a Certification Statement whereby Defendant Francis declares under the penalty of perjury that it is familiar with the Federal Motor Carrier Safety Regulations ("FMCSR") and/or Federal Hazardous Materials Regulations.

46.     Motor carriers such as Defendant Francis are required to submit a Form OP-l to the FMCSA in order to gain interstate operating authority.

47.     The Form OP-l Defendant Francis submitted contains a "Safety Certification," certifying to the FMCSA that Defendant Francis is subject to the pertinent portions of the USDOT's FMCSR at 49 CFR, Chapter 3, Subchapter B (Parts 350-399).

48.     The Form OP-l Defendant Francis submitted contains a "Safety Certification," certifying to the FMCSA that it has access to, and is familiar with, all applicable USDOT regulations relating to the safe operation of commercial vehicles and that they will comply with the regulations.

49.     Each Form OP-l Defendant Francis submitted contains a "Safety Certification," certifying to the FMCSA that, at a minimum, it:

   a.     has in place a system and an individual responsible for ensuring overall compliance with the FMCSR;

   b.     can produce a copy of the FMCSR;

   c.     has in place a driver safety training/orientation program;

   d.     is familiar with USDOT regulations governing driver qualifications and has in place a system for overseeing driver qualification requirements (49 CFR Parts 391); and

   e.     has in place policies and procedures consistent with USDOT regulations governing driving and operational safety of motor vehicles.

50.     Reasonably safe motor carriers develop and implement policies, practices, and procedures to give effect to the minimum safety standards contained in the FMCSR.

51.    Reasonably safe motor carriers train and educate their drivers regarding the safe operation of commercial motor vehicles.

52.    Reasonably safe motor carriers utilize information and training materials from industry associations and third-party safety vendors such as J.J. Keller & Associates, Inc., the "Smith System," or the National Safety Council to train and educate their drivers regarding the safe operation of commercial motor vehicles.

53.    The safe operation of commercial motor vehicles includes practices and procedures related to inspecting and maintaining the tires, wheel hub assemblies, and/or all component parts of a tractor-trailer.

54.    Reasonably safe motor carriers utilize publicly available government, industry, and trade publications regarding the preventability of highway collisions to design, develop, and implement safety management controls, which are designed to reduce collisions involving commercial motor vehicles.

55.    Reasonably safe motor carriers do not allow or permit a driver to operate their commercial motor vehicles if the driver does not have the required knowledge or skill to safely operate, inspect, and maintain the vehicle.

56.    Reasonably safe motor carriers require their drivers to inspect and maintain their tractor-trailers, including but not limited to the tires, wheel hub assemblies, and/or all component parts on a tractor-trailer.

57.    Reasonably safe motor carriers supply their drivers with properly functioning tractor-trailers that are free of defects and fit for travel on public roadways.

58.   Reasonably safe motor carriers do not permit unsafe tractor-trailers in their fleet to travel on public roadways.

59.   Defendant Francis's careless, negligent, and unlawful acts directly and proximately caused Plaintiff's harms and losses in one or more of the following particulars by refusing to use reasonable care by:

   a.   improperly maintaining the tires, wheel hub assemblies, and/or component parts on the subject tractor-trailer;

   b.   permitting the subject tractor-trailer to travel onto public roadways when it was in an unsafe condition;

   c.   refusing to inspect the tires, wheel hub assemblies, and/or component parts on the subject tractor-trailer;

   d.   refusing to train Defendant Correll in the well-known dangers of improperly maintaining the tires, wheel hub assemblies, and/or component parts of the subject tractor-trailer;

   e.   refusing to train Defendant Correll in the well-known dangers of failing to inspect the subject tractor-trailer;

   f.   refusing to properly monitor and supervise the driving habits of its drivers, employees, and/or agents, specifically Defendant Correll;

   g.   refusing to properly instruct its drivers, employees, and/or agents, specifically Defendant Correll;

   h.   entrusting a tractor-trailer to its drivers, employees, and/or agents, specifically Defendant Correll;

     i.     refusing to comply with federal and/or state regulations and industry standards, as referenced in this Complaint and as developed during the discovery in this case;

     j.     refusing to utilize available information to properly monitor its drivers, employees, and/or agents, specifically Defendant Correll, for compliance with company polices and/or state and federal regulations;

     k.     allowing Defendant Correll to operate the subject tractor-trailer despite having knowledge of his inability to do so safely;

     l.     refusing to implement adequate safety management controls to ensure compliance with the required safety fitness standard; and

     m.     refusing to utilize available technology to monitor and audit the safety performance of its drivers, including Defendant Correll.

60.    Defendant Francis's careless, negligent, and unlawful acts were the direct and proximate cause of the collision and Plaintiff's resulting harms and losses.

### E.    NEGLIGENCE *PER SE* OF DEFENDANT FRANCIS

61.    Plaintiff repleads the foregoing factual allegations as if here quoted verbatim and set forth at length herein.

62.    When Defendant Francis allowed Defendant Correll to operate the subject tractor-trailer on December 23, 2018, Defendant Francis violated the following Colorado statute:

     b.     C.R.S. §42-4-202(1), which makes is unlawful for any person to drive or move or for the owner to cause or knowingly permit to be driven or moved on any highway any vehicle or combination of vehicles which is in such unsafe

condition as to endanger any person.

63.   Plaintiff is a member of the class for whose protection the above-mentioned statute was enacted to protect.

64.   The injuries and damages Plaintiff sustained as a result of the collision are the kind of injuries and damages the above-referenced statute is intended to prevent.

65.   Defendant Francis's breach of the above-mentioned statute was a direct and proximate cause of the injuries and damages plaintiff sustained. As such, Defendant Francis was negligent *per se*.

## V.   DAMAGES

66.   As a direct and proximate result of the incident making the basis of this lawsuit, Plaintiff suffered and will, in all reasonable probability, continue to suffer the following actual damages, the dollar value of which exceeds the minimal jurisdictional limits of this Court:

    a.   Medical treatment in the past;

    b.   Medical treatment which will be necessary in the future;

    c.   Past and future pain and suffering;

    d.   Past and future mental stress and anguish;

    e.   Past and future emotional stress and anguish;

    f.   Past and future inconvenience;

    g.   Past and future loss of enjoyment of life;

    h.   Past and future physical disfigurement;

    i.   Past and future impairment;

    j.   Lost wages; and

        k.     Loss of past and future earning capacity.

67.    Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

## VI.    PLAINTIFF'S DEMAND FOR JURY TRIAL

68.    Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## VII.    PRAYER

69.    Plaintiff requests that Defendants be cited to appear and answer, and that on final trial Plaintiff has:

        a.     Judgment against Defendants for Plaintiff's actual damages, both general and special as described above;

        b.     Judgment against Defendants for pre-judgment and post-judgment interest at the legal rate to the extent allowed under the law until paid;

        c.     Judgment against Defendants for costs of court;

        d.     Attorney fees; and

        e.     All other just and lawful relief in law and in equity, general and specific, to which Plaintiff may be duly and justly entitled.

Respectfully submitted,

/s/ *S. Burgess Williams*

S. Burgess Williams
John C. (Jack) Zinda
Zinda Law Group, PLLC
600 17th Street, Suite 2625S
Denver, Colorado 80202
Telephone: (303) 800-1501
Email: service@hzfirm.com
Attorneys for Plaintiff